IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ALMIR SANCHEZ VALDEZ,      ) | |
|           ) | |
| Petitioner,      ) | |
|           ) | |
|   v.     ) | 1:26-cv-711 (LMB/IDD) |
|           ) | |
| ROBERT GUADIAN, et al.,      ) | |
|           ) | |
| Respondents.      ) | |

ORDER

Petitioner Almir Sanchez Valdez ("Sanchez Valdez"), a native and citizen of Mexico, has filed a three-count Petition for Writ of Habeas Corpus ("Petition") under 28 U.S.C. § 2241, in which he asserts that he has been illegally detained by the U.S. Department of Homeland Security's ("DHS") Immigration and Customs Enforcement ("ICE") agency since February 4, 2026. Specifically, he alleges that his characterization by DHS as an "applicant for admission" pursuant to 8 U.S.C. § 1225(a), thus subjecting him to mandatory detention under 8 U.S.C. § 1225(b)(2), violates the Immigration and Nationality Act (Count I), the implementing bond regulations at 8 C.F.R. §§ 236.1, 1236.1, and 1003.19 (Count II), and his due process rights (Count III).

Sanchez Valdez is currently detained at the Caroline Detention Center, which is within this Court's jurisdiction and the basis upon which he is suing Paul Perry, the warden of the Caroline Detention Center. Sanchez Valdez has also sued Robert Guadian, Field Office Director, of ICE's Washington DC Enforcement and Removal Operations Field Office; Todd M. Lyons, the Acting Director of ICE; Kristi Noem, the former DHS Secretary; and Pamela Bondi, the Attorney General (collectively, "the federal respondents"). For the reasons discussed in this

Order, the Court finds that Sanchez Valdez is detained pursuant to 8 U.S.C. § 1226(a). Accordingly, his Petition will be granted as to Count III, and the federal respondents will be ordered to release him from custody and provide him with a bond hearing before an Immigration Judge pursuant to 8 U.S.C. § 1226(a).[1]

## I.

According to his Petition, Sanchez Valdez has resided in the United States since 2000. [Dkt. No. 1] at ¶ 49.  He is the father of four U.S. citizen children, two of whom are minors, and has owned his own marble and tile company for approximately five years. Id. at ¶ 1. On February 4, 2026, he was arrested by immigration authorities and taken into custody at the Caroline Detention Center.  Id. ¶ 50.

Sanchez Valdez filed his Petition for Writ of Habeas Corpus on March 13, 2026.  [Dkt. No. 1].  This Court subsequently entered an Order requiring that he not "be removed or transferred from this district for any reason without this Court's permission" and directing the federal respondents to "file either a Notice indicating that the factual and legal issues presented in this Petition do not differ in any material fashion from those presented in Ceba Cinta v. Noem, et al., 1:25-cv-1818 (E.D. Va.), or an Opposition to the Petition discussing the material differences between Ceba Cinta and this Petition." [Dkt. No. 2] at 1.  In response, the federal respondents filed a Notice stating that "the factual and legal issues presented in the instant habeas petition do not differ in any material fashion from those presented in Ceba Cinta" and requesting that this Court "incorporate the filings in Ceba Cinta into the record of this habeas

---

[1] Because the Court is granting relief on due process grounds, it need not address Sanchez Valdez's arguments based on the Immigration and Nationality Act or the implementing bond regulations at 8 C.F.R. §§ 236.1, 1236.1, and 1003.19.

action." [Dkt. No. 4] at 1. Finding that oral argument will not aid the decisional process, the Petition will be resolved on the papers submitted.

## II.

The central question posed in Sanchez Valdez's Petition is whether he is subject to mandatory detention under § 1225(b)(2) or instead subject to discretionary detention and entitled to a bond hearing under § 1226(a). As the federal respondents argued in their Ceba Cinta opposition—which has been incorporated into the record in this civil action—whether an individual is detained under § 1225(b) or § 1226(a) lies in the "distinction between aliens who are detained after a lawful admission into the U.S. and those who are present without a lawful admission." Ceba Cinta v. Noem, et al., 1:25-cv-1818, Dkt. No. 9 (E.D. Va. Oct. 28, 2025). According to the federal respondents, anyone in the United States who has not been admitted is subject to mandatory detention under § 1225(b), and § 1226(a) applies only to those who have been given legal status and subsequently placed into removal proceedings. Id. Therefore, they argue that because Sanchez Valdez has not been admitted "as a legal matter" into the United States, he is inadmissible under 8 U.S.C. § 1182(a), considered to be an applicant for admission under § 1225(a), and subject to mandatory detention under § 1225(b)(2). Id.

This argument reflects DHS's novel interpretation of decades-old immigration detention statutes which, as numerous district courts throughout the country have found,[2] is contrary to

---

[2] The overwhelming majority of district courts to consider this issue have held that the detention scheme applicable to noncitizens already residing in the United States is 8 U.S.C. § 1226(a). See Barco Mercado v. Francis, 2025 WL 3295903, at *4 nn. 22–23 (S.D.N.Y. Nov. 26, 2025) (collecting hundreds of federal decisions holding that § 1226(a) is the applicable detention scheme for noncitizens already present in the United States); see also Kyle Cheney, Our Running List of Judges Who Have Ruled on ICE's Mass Detention Policy, POLITICO, https://www.politico.com/news/2026/02/18/trump-judges-immigration-detention-00784614?_sp_pass_consent=true (last updated Mar. 10, 2026).

3

DHS's implementing regulations and published guidance, the decisions of its immigration judges (until recently), longstanding practice in U.S. immigration law, the Supreme Court's interpretation of the statutory scheme, and traditional tools of statutory construction. See Romero v. Hyde, 2025 WL 2403827, at *9 (D. Mass. Aug. 19, 2025). This new approach will also subject "millions more undocumented immigrants to mandatory detention, while simultaneously narrowing § 1226(a) such that it would have an extremely limited (if any) application." Lopez Benitez v. Francis, 2025 WL 2371588, at *8 (S.D.N.Y. Aug. 13, 2025). The Court has previously addressed several of these points in Hasan v. Crawford, 800 F. Supp. 3d 641 (E.D. Va. 2025), and adopts the findings and conclusions in Hasan into this Order.

Sanchez Valdez has been present in the United States since 2000. [Dkt. No. 1] at ¶ 49. Because § 1226(a) sets forth "the default rule" for detaining and removing noncitizens "already present in the United States," Jennings v. Rodriguez, 583 U.S. 281, 303 (2018), Sanchez Valdez's detention is governed by § 1226(a). See Abreu v. Crawford, 2025 WL 51475, at *3 (E.D. Va. Jan. 8, 2025) ("There is a statutory distinction between noncitizens who are detained upon arrival into the United States and those who are detained after they have already entered the country, legally or otherwise."). And under § 1226(a) and its implementing regulations, he is entitled to a bond hearing before an Immigration Judge, in which an Immigration Judge must determine whether he poses a danger to the community, and whether he

---

Although the Court is aware of the Fifth Circuit's decision reaching a contrary conclusion, Buenrostro-Mendez v. Bondi, 166 F.4th 494 (5th Cir. 2026), that decision is not binding here, see CASA de Md., Inc. v. Trump, 971 F.3d 220, 260 (4th Cir. 2020). Moreover, the Court is unpersuaded by the Fifth Circuit majority's rationale for many of the reasons cogently set forth in Judge Douglas's dissent, which explains that the majority's interpretation risks rendering substantial portions of the statutory scheme superfluous and internally inconsistent.

is a flight risk.  8 U.S.C. § 1226(a); 8 C.F.R. § 1236.1(d)(1).  Unless an Immigration Judge makes such a determination, Sanchez Valdez's continued detention is unlawful.

III.

For all these reasons, Sanchez Valdez's Petition, [Dkt. No. 1], is GRANTED, and it is hereby

ORDERED that Sanchez Valdez be promptly released from custody, with all his personal property, in order to appear at a bond hearing before an Immigration Judge.  Sanchez Valdez must live at a fixed address which he must provide to the federal respondents[3]; and it is further

ORDERED that respondents provide Sanchez Valdez with an individualized bond hearing before an Immigration Judge pursuant to 8 U.S.C. § 1226(a) within 14 days of the date of this Order[4]; and it is further

ORDERED that respondents be and are ENJOINED from denying bond to Sanchez Valdez on the basis that he is detained pursuant to 8 U.S.C. § 1225(b)(2); and it is further

ORDERED that, if Sanchez Valdez is granted bond, respondents be and are ENJOINED from invoking the automatic stay provision at 8 C.F.R. § 1003.19(i)(2); and it is further

ORDERED that if Sanchez Valdez is released on bond, the federal respondents—along with their officers, agents, servants, employees, attorneys, successors, and assigns, and all persons acting in concert with them—be and are ENJOINED from rearresting Sanchez Valdez unless he (1) commits a violation of any federal, state, or local law; (2) fails to comply with the

---

[3] If petitioner opts to file a pleading in this civil action notifying the federal respondents of his fixed address, petitioner should file that pleading under seal.

[4] The federal respondents need not file a status report indicating whether petitioner's request for release on bond has been granted.  If petitioner believes the bond hearing he received violated his due process rights or this Court's Order, petitioner may file a motion to enforce.

conditions of his release; (3) fails to attend a properly noticed immigration hearing; or (4) is detained pursuant to a valid, final order of removal.

The Clerk is directed to enter judgment in Sanchez Valdez's favor pursuant to Federal Rule of Civil Procedure 58, forward copies of this Order to counsel of record, and close this civil action.

Entered this 20 day of March, 2026.

Alexandria, Virginia

_____/s/_____
Leonic M. Brinkema
United States District Judge

6